**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**NANCY J. COWGER,**

    Plaintiff,

v.                                                                           **Civil Action No. 2:10-CV-41
(BAILEY)**

**MICHAEL J. ASTRUE,
Commissioner of Social
Security,**

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

I.    Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge David J. Joel [Doc. 21] and the plaintiff's Objections thereto [Doc. 22]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. See **Webb v. Califano,** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ORDERED ADOPTED**.

1

II. Background

On March 25, 2010, the plaintiff filed her Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Pursuant to the Local Rules, this case was referred to the United States Magistrate Judge David J. Joel, for proposed findings of fact and a recommended disposition. On July 21, 2010, and September 10, 2010, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 14 & 19]. In support of her motion, the plaintiff asserts six claims of error on the part of the Administrative Law Judge ("ALJ"). In his motion, the defendant responds to each of these claims and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff asserts the ALJ erred at Step Three by failing to find that her medical condition meets or equals the requirements of Listing 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-bearing Joint). Specifically, the plaintiff argues that the ALJ misapplied the definition of "inability to ambulate effectively." In response, the defendant argues that the record shows the plaintiff had full mobility in both legs, that she only occasionally used over-the-counter pain medication, and that she could walk at least an hour without any increased discomfort.

Second, the plaintiff alleges the ALJ erred at Step Three by failing to assess her neck and spinal impairments. In particular, the plaintiff argues that the ALJ should have discussed Listing 1.04 (Disorders of the Spine) and explained why the evidence of record did not meet or equal that listing. The defendant responds that the ALJ assessed the plaintiff's neck and spinal problems in formulating her Residual Functional Capacity ("RFC") prior to Step Four.

Third, the plaintiff claims the ALJ erred at Step Three by failing to expressly consider whether her obesity in combination with her other severe physical impairments meets or equals a listed impairment. Specifically, the plaintiff argues that her obesity should have been considered in conjunction with her three replacements of major weight-bearing joints. In response, the defendant argues that the ALJ considered the plaintiff's obesity in formulating her RFC.

Fourth, the plaintiff alleges the ALJ conducted an improper assessment of her credibility in formulating her RFC. In particular, the plaintiff argues that the ALJ improperly relied upon her lack of medical treatment and daily activities to discredit her subjective complaints of pain. The defendant responds that the ALJ properly discredited the plaintiff, applying the correct standard to the medical evidence of record.

Fifth, the plaintiff asserts the ALJ failed to properly consider the treating source opinion of Richard Trenbath, M.D., in formulating her RFC. In particular, the plaintiff argues that Trenbath's opinion indicated that she was unable to engage in full-time sedentary work. According to the plaintiff, the ALJ failed to adequately explain why he rejected the opinion. In response, the defendant argues that the ALJ considered Trenbath's opinion and gave legally proper reasons for the weight given the opinion.

Sixth, the plaintiff claims the ALJ erred at Step Five by finding that she could perform sedentary work and by posing a hypothetical to the vocational expert based upon that finding. In this regard, the plaintiff emphasizes that the state agency opinions relied upon predate Trenbath's opinion that she could not perform any work on a sustained basis. The defendant responds that the plaintiff's limitations were properly considered in the RFC before Step Four.

On September 29, 2010, Magistrate Judge Joel rejected all six of the plaintiff's claims of error and recommended that the plaintiff's motion be denied and the defendant's motion be granted. ([Doc. 21] at 37). First, the magistrate judge concluded that the ALJ properly found that the plaintiff's severe medical impairments fail to satisfy the requirements of Listing 1.03. (Id. at 23). In so concluding, the magistrate judge emphasized that the record shows "[the plaintiff] can ambulate without using a two-handed assistance device, and can walk several hundred feet across farmland with only a walking stick . . .." (Id.). Second, the magistrate judge concluded that the ALJ's failure to specifically discuss Listing 1.04 is harmless error because the plaintiff concedes that her condition does not meet the requirements of the listing. (Id. at 24-25). Third, the magistrate judge also concluded that the ALJ's failure to expressly consider her obesity at Step Three is harmless error. (Id. at 26-27). Specifically, the magistrate judge emphasized that explicit consideration of the plaintiff's obesity would not change the ALJ's decision at Step Three because he had already found that she could effectively ambulate. (Id. at 26).

Fourth, the magistrate judge concluded that the ALJ conducted a proper assessment of the plaintiff's credibility. (Id. at 32). In this regard, the magistrate judge found that the ALJ had correctly considered evidence of daily activities as well as the objective medical evidence to discredit the plaintiff's subjective complaints. (Id. at 31-32). Fifth, the magistrate judge concluded that the ALJ provided proper reasons for the weight he attributed to Trenbath's opinions. (Id. at 34). Specifically, the magistrate judge found adequate that the ALJ had attributed less weight to Trenbath's opinions because they are based solely on the plaintiff's subjective complaints, are inconsistent with the record as a whole, and are inconsistent with the plaintiff's daily activities. (Id. at 33-34). Sixth, the

magistrate judge concluded that substantial evidence support's the ALJ's determination that the plaintiff can perform sedentary work. (Id. at 36-37). In particular, the magistrate judge found that the state agency opinions relied on by the ALJ are consistent with the plaintiff's medical history and testimony at the hearing. (Id. at 36).

III.   Applicable Standards

    A.   Judicial Review of an ALJ Decision

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. *See* 42. U.S.C. § 405(g). 'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.' **Richard v. Perales**, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987). The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' *See* **Perales**, 402 U.S. at 401, 91 S.Ct. at 1427 (citing **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 216 (1938)). Substantial evidence . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance . . .. Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See* **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966); **Snyder v. Ribicoff**, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. **King v. Califano**, 599 F.2d 597, 599 (4th Cir.

1979). 'This Court does not find facts or try the case *de novo* when reviewing disability determinations.' ***Seacrist v. Weinberger***, 538 F.2d 1054, 1056-57 (4th Cir. 1976)." ***Hays v. Sullivan***, 907 F.2d 1453, 1456 (4th Cir. 1990).

    B.    Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

    Step One:    Determine whether the claimant is engaging in substantial gainful activity;

    Step Two:    Determine whether the claimant has a severe impairment;

    Step Three:    Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

    Step Four:    Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

    Step Five:    Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

*See* 20 C.F.R. § 404.1520.

IV.    Discussion

In her Objections [Doc. 22], timely filed on October 14, 2010, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that one of the ALJ's step-conclusions is not supported by substantial evidence.

### A. ALJ's Consideration of Listed Impairments

In her motion, the plaintiff asserts the ALJ failed to properly compare her severe impairments to the listed impairments. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of listed impairments.

#### 1. Knee and Hip Replacements

The plaintiff contends the ALJ erred at Step Three by failing to find that her three weight-bearing joint replacements – bilateral knees and left hip – met the requirements of Listing 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-bearing Joint). More specifically, the plaintiff argues that the ALJ improperly considered her ability to walk across her farmland, and to do so without an assistive device, to find that she was able to "effectively ambulate." This Court disagrees.

Section 1.03 of the Listing of Impairments requires: (1) reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; (2) with inability to ambulate effectively, as defined in section 1.00B2b; and (3) return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. Section 1.00B2b defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., and impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." § 1.00B2b(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without use of a hand-held assistive device(s) that limits the

7

functioning of both upper extremities . . .." Id.  Hand-held assistive devices are items such as a cane, crutch, or walker.  § 1.00J4.

Here, the ALJ found that though the plaintiff's knee and hip replacements constitute surgical arthrodeses of major-weight bearing joints, she failed to show an "inability to ambulate effectively":

> The claimant testified that she can walk several hundred feet on a good day, usually with a walking stick, and that she walks 500 feet from her home to the chicken house on her farm, sometimes being able to return to her home without sitting down.  In her Function Report, the claimant indicated only that her legs would hurt with prolonged walking.  (Exhibit 6E).  The claimant's treating physician indicated that she depends on her walking stick about 50% in order to function during the day.  (Exhibit 21F).  The claimant's ability to walk is clearly not so limited as to satisfy the "inability to effectively ambulate" requirement of Listing 1.03.

([Doc. 10] at 37).

In her Objections, the plaintiff argues that the ALJ's analysis contains two errors. First, the ALJ failed to recognize that the plaintiff testified she could walk 500 feet only on a good day.  On a bad day, she drove to the chicken house.  ([Doc. 22] at 1).  Second, the ALJ failed to recognize her inability to climb a few steps to her bedroom as an example of ineffective ambulation in section 1.00B2b(2).  The Court finds these arguments unavailing.

The plaintiff's first argument is inaccurate, as the ALJ explicitly recognized that the plaintiff has good and bad days: "The claimant testified that she can walk several hundred feet ***on a good day***."  ([Doc. 10] at 37) (emphasis added).  The plaintiff's second argument is based upon a failure to fully understand the analytical framework of the regulations. Whether an individual can ambulate effectively is determined "based on the medical and other evidence in the case record, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) and

8

1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2a. Therefore, the ALJ properly relied upon the plaintiff's testimony, Function Report, and her treating physician's documentation[1] to conclude that the plaintiff could effectively ambulate. As section 1.00B2a explains, the ALJ was not required to further develop the examples in section 1.00B2b(2). Accordingly, this Court finds that substantial evidence supports the ALJ's conclusion that the plaintiff's hip and knee replacements fail to meet the requirements of Listing 1.03.

### 2. Obesity

The plaintiff next contends the ALJ erred at Step Three by failing to consider her obesity when determining whether her severe impairments met or equaled a listed impairment. More specifically, the plaintiff argues that the ALJ improperly failed to consider her obesity in combination with her hip and knee replacements. This Court disagrees.

Effective October 25, 1999, the Social Security Administration ("SSA") removed obesity from the Listing of Impairments. To ensure that obesity is still addressed in the listings, the SSA added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings. See SSR 02-1p; 2000 WL 628049, *1. For example, section 1.00Q provides that "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, . . . adjudicators must consider any

---

[1]In fact, as the magistrate judge correctly noted, "[t]he fact that Plaintiff's treating physician acknowledged that she can walk 50% of the time without the use of any assistive device, and 50% of the time with only a single walking stick, is, standing alone, substantial evidence supporting the ALJ's conclusion. *See* **Holfield v. Astrue**, 2010 WL 2612604 at *3 (W.D. Va. June 25, 2010) (substantial evidence supported ALJ conclusion that Plaintiff did not meet the requirement of § 1.00B2b(1) because Plaintiff's treating physician stated that Plaintiff did not have to use an assistive device when standing or walking)." ([Doc. 21] at 23).

additional and cumulative effects of obesity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q. In this regard, the SSA has explained that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  SSR 02-1p; 2000 WL 628049, *5.  Similarly, the SSA has advised that "if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) . . .."  Id.

Here, after the ALJ found that the plaintiff can effectively ambulate, he provided no discussion as to whether the plaintiff's obesity, in combination or alone, met a listed impairment. In her Objections, the plaintiff argues that this was error. This Court disagrees.

At Step Three, the ALJ outlined the plaintiff's argument that she had a listed impairment, "Claimant's counsel has specifically argued that the claimant's orthopedic conditions meet or equal the series of listings in 1.00 Musculoskeletal System *because the claimant, according to counsel, has <u>an inability to ambulate effectively</u>, as required by several of the listings in this series.*"  ([Doc. 10] at 36) (emphasis added). Thus, by her own admission, the issue of whether the plaintiff has a listed impairment depends solely upon whether she can effectively ambulate. Therefore, once the ALJ concluded that the plaintiff could effectively ambulate, a conclusion this Court has already upheld, it was unnecessary for the ALJ to discuss the effect of the plaintiff's obesity at Step Three. Accordingly, this Court finds that substantial evidence supports the ALJ's conclusion at Step Three.

### B. ALJ's Decision to Discredit the Plaintiff's Subjective Complaints

In her motion, the plaintiff alleges the ALJ improperly relied upon her daily activities and lack of medical treatment or medications to discredit her subjective complaints. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

An ALJ's credibility analysis is a two-step process:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

SSR 96-7p; 1996 WL 374186, *2.

In addressing step two, an ALJ should consider the following seven factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms.

SSR 96-7p; 1996 WL 374186, *3.

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including three joint replacements, spinal surgery, and obesity, which could reasonably be expected to produce the plaintiff's pain or other symptoms. At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects on his ability to do basic work activities. In so doing, the ALJ considered the plaintiff's daily activities and lack of medical treatment or medications.

In her Objections, the plaintiff claims the lack of treatment evidence the ALJ relied upon to discredit her was inappropriate because "[her] lack of medical treatment and medications were as a result of lack of finances and resources, as opposed to lack of need." ([Doc. 22] at 2). This Court disagrees.

First, this Court finds no error in the ALJ's consideration of the plaintiff's lack of medical treatment or medications. In fact, such a consideration appears to be encouraged by the fourth and fifth factors listed above. With regard to medications, the ALJ noted the plaintiff's testimony that "she takes no medications at all other than occasional over the counter Aleve . . . ." ([Doc. 10] at 38). In so doing, the ALJ was properly considering "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p; 1996 WL 374186, *3. As for medical treatment, the ALJ noted that other than a visit in January 2009 to correct a hip dislocation caused by a "violent fall," the plaintiff had not sought treatment for pain or other treatments since completing her surgeries. ([Doc. 10] at 38). Appropriately, the ALJ was

considering "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms."  SSR 96-7p; 1996 WL 374186, *3.[2]

Second, this Court finds substantial evidence in the ALJ's consideration of several other appropriate factors.  For example, the ALJ considered the location, duration, frequency, and intensity of the plaintiff's symptoms, noting that "she still has swelling in her legs if she is up on them for too long[;] . . . she still has pain in her neck after her surgery[;] . . . she has headaches, usually at night[;] . . . [and] she has difficulty holding her hands out to hold a newspaper or drive."  ([Doc. 10] at 38).  Moreover, the ALJ outlined factors that precipitate or aggravate these symptoms, such as standing on her feet for too long (leg swelling); lifting, typing, and sitting (neck pain); and lifting more than she should (headaches).  (Id.).  Regarding the plaintiff's self-treatment, the ALJ noted that "she puts her feet up every couple of hours at hip level for 20-30 minutes each time" to help with her leg swelling.  (Id.).  Finally, the ALJ considered other factors concerning the plaintiff's functional limitations.  For example, considering the plaintiff's obesity, the ALJ found that "[t]he claimant reports that she is 5'5'' and weighs 290 pounds, a body habitus that may be reasonably anticipated to produce or contribute to symptoms of back, knee or other musculoskeletal pain, and to generally limit mobility and stamina."  (Id. at 39).

For these reasons, this Court finds that substantial evidence supports the ALJ's

---

[2]That the plaintiff may have had a lack of finances did not preclude the ALJ from considering her lack of medical treatment and medications.  As the ALJ noted, the plaintiff's treating physician had once before procured a Medicaid card for the plaintiff to receive testing.  (See [Doc. 10] at 39).  Nothing in the record indicates that another attempt was made in an effort to receive treatment for pain.  As such, the ALJ appropriately considered the plaintiff's lack of medical treatment and medication as relevant to his credibility determination.

13

credibility determination. Accordingly, in formulating the plaintiff's RFC, the ALJ appropriately considered her lack of credibility concerning the intensity, persistence, and limiting effects of her ability to do basic work activities.

### C. ALJ's Consideration of Trenbath Opinion

In her motion, the plaintiff asserts the ALJ failed to properly consider the medical opinion evidence of Richard Trenbath, M.D., the plaintiff's primary care physician. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the Trenbath opinion.

On February 29, 2008, Trenbath authored a report for the West Virginia Department of Health and Human Resources. In the report, Trenbath commented on the plaintiff's ability to work full-time. Specifically, Trenbath opined that the plaintiff would be unable to perform full-time work for one year due to knee and hip replacements. ([Doc. 10-5] at 26).

On January 21, 2009, Trenbath authored a questionnaire as the plaintiff's primary care physician. In the questionnaire, Trenbath noted the plaintiff's impairments and symptoms, including her hip and knee replacements as well as her obesity. ([Doc. 10-5] at 31). Next, Trenbath found that these impairments and symptoms limit the plaintiff to standing and walking only one to two hours of an eight-hour working day while she could only sit for one hour at a time. (Id. at 32-33). Finally, Trenbath opined that the plaintiff is unable to perform full-time work because of her multiple joint replacements. (Id. at 37).

In considering the Trenbath opinion, the ALJ stated:

> The undersigned affords little weight to Dr. Trenbath's opinions as they are based solely on the claimant's subjective complaints, and are inconsistent with the record as a whole and are inconsistent with the claimant's activities. Dr. Trenbath, who is not an orthopedic specialist, appears to be working under the assumption that the claimant cannot work in any job simply because she has had multiple joint replacements. The undersigned does not accept that premise to be supported by the evidence, and, therefore, affords little weight to the opinions that are based on that premise. Furthermore, it had been a year since Dr. Trenbath had seen the claimant when he completed the detailed assessment contained in Exhibit 21F. The doctor's opinions are necessarily based on the claimant's subjective complaints because the doctor could not have had anything more than that before him at the time of his assessment. As discussed above, the undersigned finds that the claimant's complaints are not fully credible; therefore, any medical opinion based on those complaints will not be afforded great weight. The claimant's activity level is also inconsistent with the doctor's opinion. For instance, the doctor stated that the claimant could only be on her feet standing and walking for only one hour and could only sit for one hour out of an eight hour workday. (Exhibit 21F). This is in direct contradiction to the testimony of the claimant that she is on her feet two to three hours a day and her description of the activities that she is involved in as discussed above. Accordingly the undersigned affords little weight to the opinions of Dr. Trenbath.

([Doc. 10] at 39-40).

In her Objections, the plaintiff claims the ALJ erred by not adequately considering the Trenbath opinion. ([Doc. 22] at 2). More specifically, the plaintiff argues that the ALJ improperly rejected the Trenbath opinion because it relied upon the plaintiff's subjective complaints. (Id. at 2-3). This Court finds, however, that substantial evidence supports the ALJ's RFC assessment.

According to the SSA, treating source opinions are entitled to special significance and, sometimes, controlling weight. SSR 96-5p; 1996 WL 374183, *2. However, treating source opinions on issues reserved to the Commissioner, such as the RFC assessment, "are never entitled to controlling weight or special significance." Id. Nevertheless, opinions

15

from any medical source on issues reserved to the Commissioner "must never be ignored." In fact, "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p; 1996 WL 374183, *3.

Here, the ALJ appropriately followed these parameters, deciding to attribute little weight to Trenbath's opinions because "they are based solely on the claimant's subjective complaints, are inconsistent with the record as a whole and are inconsistent with the claimant's activities." ([Doc. 10] at 40). Therefore, the ALJ provided three reasons for the weight he attributed to Trenbath's opinions.

First, remaining consistent with his earlier credibility determination, the ALJ found that to the extent Trenbath relied solely upon the plaintiff's subjective complaints, his opinions should be attributed little weight. In support of this finding, the ALJ provided a proper explanation: because it had been a year since Trenbath had last examined the plaintiff, his opinions "are necessarily based on the claimant's subjective complaints because the doctor could not have had anything more than that before him at the time of his assessment." ([Doc. 10] at 40). Second, the ALJ reasonably considered the state agency opinions more consistent with the record as a whole, including the opinions of the plaintiff's neurosurgeons, Julian E. Bailes, M.D. and Vincent Miele, M.D., who cleared her for full activity in January 2007. Finally, the ALJ appropriately noted that Trenbath's assessment was inconsistent with the plaintiff's own testimony regarding her daily activities. For example, Trenbath opined that the plaintiff could only stand or walk for one hour in an eight-hour workday, whereas the plaintiff testified that she stands or walks for two to three

hours each day.

For these reasons, the Court finds that the ALJ's consideration of the Trenbath opinion does not require a finding that the ALJ's RFC assessment is not supported by substantial evidence.

### D. Portions of the R&R to which the Plaintiff Filed No Objections[3]

Upon careful consideration of the record, the parties' motions, and the R&R, this Court finds that the magistrate judge committed no clear error with regard to the portions of the R&R to which the plaintiff filed no objections.

## IV. Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation **[Doc. 21]** should be, and hereby is, **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 22]** are **OVERRULED**. Therefore, this Court **ORDERS** that the plaintiff's Motion for Summary Judgment **[Doc. 14]** is hereby **DENIED** and the defendant's Motion for Summary Judgment **[Doc. 19]** is hereby **GRANTED**. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** it **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

---

[3]Upon a careful review of the plaintiff's Objections, the Court notes that the plaintiff does not object to the magistrate judge's rejection of her arguments regarding Listing 1.04, her ability to perform sedentary work, and the ALJ's consideration of her daily activities to discredit her subjective complaints. Accordingly, the magistrate judge's conclusions have been reviewed for clear error.

17

**DATED**: January 21, 2011.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE